IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JONATHAN BOATWRIGHT,

    Plaintiff,

vs.                                                          CASE NO. 1:13-cv-106-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for disability insurance benefits and supplemental security income (SSI). (Doc. 1.) The Commissioner has answered, and both parties have filed briefs outlining their respective positions. (Docs. 9, 18,19.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits under Title II and for SSI under Title XVI of the act in on December 15 and 16, 2009, alleging disability due to carpal tunnel syndrome in both arms. (R. 125-35, 139, 143.) His applications were denied initially and upon reconsideration. (R. 61-63, 66-68, 70-71, 73-74.) An administrative hearing was held before an Administrative Law Judge ("ALJ") on June 3, 2011. (R. 371-409.) On December 15, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 11-21.) The Appeals Council denied review. (R. 1-4.)

Plaintiff filed the instant complaint on June 5, 2013, and raises one issue: whether the ALJ failed to fully and fairly develop the record by not requesting that consultative physician Dr. Humphreys complete a mental residual functional capacity form.  (Doc. 18.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16] However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

*Case No. 1:13-cv-106-MP-GRJ*

perform a full range of employment at the appropriate level of exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III. SUMMARY OF THE RECORD

#### A. Medical Records: Mental Impairments

Plaintiff saw psychiatrist Dr. Ramon Pino from June 2010-December 2010. (R. 297-302.) On June 26, 2010, Plaintiff's chief complaints were difficulty sleeping, low libido, anger about his childhood, inability to find a job, and being a convicted felon. On mental status examination, Plaintiff had a coherent thought process and was goal oriented and logical. He had no symptoms of psychosis or dementia and was oriented

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

to person, place, self, and time.  There was no evidence of disorientation, confusion, or cognitive impairment.  Plaintiff had average intelligence with good judgment and insight.  There was no current animosity, belligerence, or hostility and no suicidal ideation.  Dr. Pino diagnosed Plaintiff with a mood disorder and recommended psychotherapy and medication.  (R. 302.)  Dr. Pino's treatment notes from the remainder of Plaintiff's visits (through December 2010) were similar to those noted on Plaintiff's first visit.  (R. 297-301.)

Plaintiff was examined by consultative examining psychologist Janet K. Humphreys, Ph.D., on July 11, 2011.  (R. 352-58.)    Plaintiff complained of anger, irritability, anxiety, difficulty sleeping, guilt, low energy, poor concentration, and poor appetite, nightmares, and flashbacks.  (R. 352.)  On mental status examination, Dr. Humphreys noted that Plaintiff was cooperative, appeared to be a reliable historian, and had a mildly anxious mood.  Plaintiff's thought process was logical and goal-oriented and there was no peculiarity or bizarreness in his thought content.  His judgment and insight were good; he was well oriented to person, place, and time; his recent and remote memory appeared to be intact; and he had difficulty with calculations.  Dr. Humphreys diagnosed Plaintiff with bipolar disorder, posttraumatic stress disorder, and chronic pain disorder.  (R. 354.)  Dr. Humphreys indicated that Plaintiff would benefit from resuming his psychiatric treatment.  With regard to Plaintiff's ability to do work-related activities, Dr. Humphreys concluded that Plaintiff's "concentration appeared impaired, and may impact his ability to carry out complex instructions. [His] memory appeared grossly intact.  His social skills and judgment as well as his ability to perform

simple, repetitive tasks may be affected by his mood disorder and anxiety." (R. 355.)

In addition to her evaluation notes, Dr. Humphreys also completed a Medial Source Statement of Ability to do Work-Related Activities (Mental). She found that Plaintiff had no limitations in his ability to understand and remember simple instructions; or carry out simple instructions. He had mild limitations in the ability to make judgments on simple work-related decisions. Plaintiff had moderate limitations in his ability to understand and remember complex instructions; carry out complex instructions; and make judgments on complex work-related decisions. Dr. Humphreys attributed these limitations to Plaintiff's poor concentration and difficulties with calculation. (R. 356.) Dr. Humphreys found that Plaintiff moderate limitations in his abilities to interact appropriately with the public, supervisors, co-workers, and to respond appropriately to usual work situations and changes in a routine work setting. (R. 357.)

### B. Hearing Testimony

At his June 3, 2011 administrative hearing, Plaintiff testified that Dr. Pino was treating him for bipolar disorder. He experiences anger for "no apparent reason" but does not get into fights with others. He does sometimes argue with other people when he gets angry. He is often irritable. Plaintiff testified that he gets depressed because he has no income. He sometimes has crying spells. (R. 384-85.) Plaintiff reported trouble with concentration. On a typical day, he might let his dogs out, watch television, and sleep. (R. 386.) Plaintiff testified that he helped out around the house and vacuums "constantly." (R. 388.) He reported taking his medications as prescribed and going to counseling once a month. (R. 394.) The ALJ kept the record open after the

hearing so that Plaintiff could attend a consultative psychological exam.  (R. 408-09.)

### C. <u>ALJ's Decision</u>

The ALJ determined that Plaintiff suffered from the severe impairments of: carpal tunnel syndrome status post bliateral carpal tunnel release; lumbar degenerative disc disease; bipolar disorder; and post-traumatic stress disorder.  (R. 13.)   The ALJ found that Plaintiff's impairments did not meet or equal a Listing, and with regard to his mental impairments found that Plaintiff had moderate difficulties in activities of daily living and social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (R. 14-15.)  The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to do the full range of light work with various exertional, postural, and environmental limitations.  (R. 15.)  As to Plaintiff's mental RFC, the ALJ found that Plaintiff was limited to performing simple, repetitive, non-detailed tasks; to work where co-worker and public contact is casual and infrequent; where supervision is non-confrontational; and where changes in the workplace are infrequent and gradually introduced.  (R. 15-16.)  Plaintiff could not perform his past relevant work as a store laborer or electrician helper, but jobs did exist in significant numbers in the national economy that Plaintiff could perform (i.e., office helper, storage facility rental clerk, surveillance systems monitor) and therefore Plaintiff was not disabled.  9R. 19-21.)

### IV.  <u>DISCUSSION</u>

Plaintiff contends the ALJ erred by failing to develop the record by not requesting that consultative psychological examiner Dr. Humphreys complete a mental RFC form

(Form SSA-4734-F4-SUP).  Plaintiff argues that the MRFC form addresses 20 specific areas of limitations. Plaintiff specifically requested that Dr. Humphreys complete number 11 of the check off form in Part I of the form, which address Plaintiff's ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Doc. 18.)

The record shows that counsel for Plaintiff sent the ALJ a letter on August 9, 2011 requesting that the ALJ ask Dr. Humphreys to complete a mental RFC form in addition to her medical source statement.  (R. 366-67.)  In his written decision, the ALJ acknowledged the request and noted that "DDS[21] has stated that Dr. Humphreys is not required to fill out these forms."  (R. 19.)  For the reasons discussed below, the Commissioner's decision is due to be affirmed because the ALJ did not have a duty to re-contact Dr. Humphreys in order to fully and fairly develop the record.

It is well-settled that an ALJ has a basic obligation to fully and fairly develop the record.[22]  This obligation exists whether or not a claimant is represented by counsel.[23]  As a hearing is non-adversarial in nature,[24] the duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper

---

[21] Disability Determination Service

[22] Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); see also Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000).

[23] Zaldivar, 81 F. Supp 2d at 1359.

[24] Id.

evaluation of the evidence.[25]  In all such cases, there must be a showing of prejudice before remand is warranted for further development.[26]  Prejudice has been found when the record "has evidentiary gaps which result in unfairness or 'clear prejudice.'"[27] An ALJ, however, is not required to order medical evidence to have a complete record unless the record establishes that it is necessary to enable the ALJ to render his decision.[28]

Social Security Ruling 96-5P provides that the RFC "is based upon consideration of all relevant evidence in the case record."  SSR 96-5P, 1996 WL 374183 (July 2, 1996).  "A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."  *Beegle v. SSA,* 482 F. Appx. 483, 486 911th Cir. 2012) (unpublished); *see also* 20 C.F.R. § 416.927.

As the ALJ alluded in his opinion, he did not have a duty to re-contact Dr. Humphreys to ask that she complete a mental RFC form.  The ALJ's decision in this case was rendered on December 15, 2011.  (R. 11-21.)  At that time,[29] 20 C.F.R. §

---

[25]  Mason v. Barnhart, 63 Fed. Appx. 284, 2003 WL 1793283, *2 (9th Cir. 2003).

[26] Brown v. Shalala, 44 F. 3d 931, 935 (11th Cir. 1995); Kelley v. Heckler, 761 F. 2d 1538, 1540 (11th Cir. 1985).

[27] Brown, 44 F. 3d at 935 (quoting Ware v. Schweiker, 651 F. 2d 408 (5th Cir. Unit A July 1981)).

[28] Holladay v. Bowen, 848 F. 2d 1206 (11th Cir. 1988) (concerning the ordering of a consultative examination); Kelly, 761 F. 2d at 1540 (concerning additional medical information submitted by claimant).

[29] Effective March 26, 2012, the Commissioner eliminated  20 C.F.R. § 404.1512(e)(1) as quoted above.  Under the new regulations, adjudicators are not required to recontact medical sources and have discretion to determine how best to resolve any inconsistencies..  *See also* "How We Collect and Consider Evidence of Disability," 77 FR 10651-01, at *10651 (Feb. 23, 2012) ("We are modifying the requirement to recontact your medical source(s) first when we need to resolve an inconsistency or insufficiency in the

404.1512(e)(1) provided:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

*See also* 20 C.F.R. § 416.912(e)(1) (2011). "In evaluating the necessity for a remand, we are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). "The likelihood of unfair prejudice may arise if there is an evidentiary gap that 'the claimant contends supports her allegations of disability.'" *Shaw v. Astrue*, 392 Fed. Appx. 684, 688 (11th Cir. 2010) (quoting *Brown*, 44 F.3d at 936 n. 9).

Here, there was more than sufficient evidence for the ALJ to make a disability determination. The ALJ developed a RFC based upon the record as a whole, which included treating source records from Dr. Pino (R. 297-302), as well as consultative examination notes and a medical source statement by Dr. Humphreys. (R. 352-58.) The ALJ appropriately considered all of this evidence in determining Plaintiff's mental RFC. In accord with the record as a whole and with Dr. Humphreys' medical source statement, the ALJ limited Plaintiff to performing simple, repetitive, non-detailed tasks;

---

evidence he or she provided . . . By giving adjudicators more flexibility in determining how best to obtain this information, we will be able to make a determination or decision on disability claims more quickly and efficiently in certain situations. Eventually, our need to recontact your medical source(s) in many situations will be significantly reduced").

to work where co-worker and public contact is casual and infrequent; where supervision is non-confrontational; and where changes in the workplace are infrequent and gradually introduced. (R. 15-16.)

Furthermore, while Plaintiff focuses on what Dr. Humphreys' conclusion might be on Number 11 of the "Summary Conclusions" section of the form, this is not an RFC assessment. The Summary Conclusions "are only a worksheet containing summary conclusions, as described in both the MFRC form and the Program Operations Manual ("POMS") § DI 24510.060(B0(2)." *Cook v. Astrue*, 2009 WL 302186, at *5 (N.D. Ga. 2009); *see also Jenkins v. Astrue*, 2012 WL 807487, at *9 (N.D. Fla. 2012) (same); *West v. Astrue*, 2011 WL 825791, *12 (E.D. Tenn. 2011) ("The Summary Conclusions section of the Form 'is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment.'"). Section III of the form ("Functional Capacity Assessment") ask the expert to explain her summary conclusions in narrative form. Here, Dr. Humphreys has already provided a summary of Plaintiff's ability to do work related activities (R. 355) and a separate medical source statement of ability to do work related activities. (R. 365-58.) Notably, the ALJ incorporated these findings into his mental RFC. Requiring the ALJ to re-contact to Dr. Humphreys to complete the MFRC form would not have changed the outcome, especially where it is the duty of the ALJ, not the consultative examiner, to determine Plaintiff's RFC.

In sum, the record does not suggest that there were any gaps in the record such that the ALJ was unable to render a decision or was required to re-contact Dr.

Humphreys. The record is neither ambiguous nor inadequate. Accordingly, the ALJ developed a full and fair record and the Commissioner's decision is due to be affirmed.

## VI. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida this 28th day of April 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**